**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RETAIL DESIGNS, INCORPORATED, a
Georgia corporation,
<u>Plaintiff-Appellant,</u>

v.                                                          No. 98-2437

CATO CORPORATION, a Delaware
corporation,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CA-98-266-2)

Argued: May 6, 1999

Decided: July 9, 1999

Before WILKINSON, Chief Judge, and TRAXLER and KING,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Erik T. Engle, PULLIN, KNOPF, FOWLER & FLANA-
GAN, Charleston, West Virginia, for Appellant. Harley E. Stollings,
Summersville, West Virginia, for Appellee. **ON BRIEF:** Gary E. Pul-
lin, PULLIN, KNOPF, FOWLER & FLANAGAN, Charleston, West
Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Retail Designs, Incorporated ("Retail Designs"), the owner of a shopping center, sued its tenant, Cato Corporation ("Cato"), for failing to pay the full amount of rent that Retail Designs believed was due under its lease. In response, Cato contended that because of Retail Designs's failure to secure other, appropriate tenants for the shopping center, Cato could pay rent at a reduced rate specified in the lease. The district court agreed with Cato's reading of the lease and, concluding that the lease was unambiguous, granted Cato's motion for summary judgment. Because we agree that the lease unambiguously permits Cato to pay rent at the reduced rate, we affirm.

I.

Cato operates retail clothing stores. In 1985, Cato entered into a lease agreement with Walk Associates, under which Cato leased retail space at a newly developed strip mall in Summersville, West Virginia. Under the original lease agreement (the "Lease"), Cato was required to pay both a fixed amount of rent per month and an additional sum equal to a percentage of Cato's yearly gross revenues.

Also under the Lease, Walk Associates warranted that certain major tenants--a discount department store, a food store, and a drug store--would be operating in the shopping center when Cato opened for business and that those tenants would continue to do business in the shopping center. Paragraph 29 of the Lease provided specific remedies for breach of this warranty:

> LESSOR warrants that in the event any one of said tenants should not be open for business when LESSEE opens for business, or should thereafter vacate its premises or cease its

2

operation in the Shopping Center, LESSEE shall have the following options:

(a) LESSEE may cancel this Lease . . . ; or

(b) During the period of such major tenants [sic] vacancy, LESSEE may abate fixed rent and pay LESSOR percentage rent only equal to four percent (4%) of gross retail sales . . . .

J.A. 110.

The Lease was amended twice in 1987. Only the Second Lease Amendment is relevant here. Among its other provisions, the Second Lease Amendment specified the terms upon which the Lease could be renewed:

> 5. RENEWAL OPTION. Provided LESSEE is not in default, upon expiration of the original term of the Lease on January 31, 1998, this Lease shall be automatically renewed for a period of five (5) years . . . under the same terms and conditions except monthly fixed rent shall be FOUR THOUSAND AND NO/100 DOLLARS ($4,000.00) plus percentage rent . . . equal to five percent (5%) of all completed gross retail sales . . . .

J.A. 141.

Retail Designs later acquired Walk Associates' interest in the Lease through a series of assignments. In 1992, the shopping center's original discount department store went out of business. Cato then stopped paying fixed monthly rent and instead paid only percentage rent, as permitted by Paragraph 29 of the Lease. When the Lease renewed on February 1, 1998, Cato continued to pay rent at this reduced rate, because no new discount department store had yet opened in the shopping center.

But Retail Designs demanded that Cato instead pay the full $4000 fixed monthly rent called for in the "Renewal Option" provision of

3

the Second Lease Amendment. Cato refused, arguing that the rent-abatement language of Paragraph 29 continued to apply, even after the Lease had renewed. Retail Designs then sued Cato in the Southern District of West Virginia for breach of contract.

Both parties moved for summary judgment, each arguing that the contractual language unambiguously supported its position. In a well-reasoned memorandum opinion, the district court granted summary judgment for Cato. The district court explained that, under the Renewal Option, the Lease expressly renewed "under the same terms and conditions" as the original Lease. The court concluded that those "terms and conditions" included Paragraph 29's rent-abatement provisions. As a result, the court held that the $4000 fixed rent called for in the Renewal Option never became due, because (1) the discount department store remained vacant, and (2) Paragraph 29 expressly permitted Cato to abate fixed rent "during the period of [a] major tenant['s] vacancy."

Retail Designs appeals, arguing that the Renewal Option's express requirement of $4000 fixed monthly rent trumps the abatement provision of Paragraph 29.

II.

We have carefully considered the briefs and oral arguments of the parties and those portions of the record pertinent to their various arguments. Having done so, we find no reversible error in the district court's grant of summary judgment in Cato's favor. We adopt the opinion of the district court and affirm on its reasoning. <u>Retail Designs, Inc. v. Cato Corporation</u>, No. 2:98-0226 (S.D. W. Va. Aug. 24, 1998) (unpublished).

<u>AFFIRMED</u>